THE PEOPLE OF THE STATE OF NEW YORK ex rel. ROBERT MACNISH, Respondent, *v.* RHINELANDER WALDO, as Police Commissioner of the City of New York, Appellant.

New York (city of) — police — Three-Platoon Law (L. 1911, ch. 306) — construction and effect of provision that tours of duty of patrolmen shall not exceed eight hours of each consecutive twenty-four hours — refusal of patrolman to obey order to attend drill in interval between hours of duty.

The Three-Platoon Law (L. 1911, ch. 306) was not intended to relieve members of the police force of all duty, even that of obedience to their superiors, except during eight hours of the twenty-four. An order requiring a patrolman to report for drill during other hours is reasonable and there is nothing in the statute to make it unlawful, and a determination of the police commissioner of the city of New York dismissing a patrolman from the force for disobeying such an order should be confirmed.

*People ex rel. MacNish* v. *Waldo*, 162 App. Div. 28, reversed.

(Argued June 4, 1914; decided July 14, 1914.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 10, 1914, which annulled, on certiorari, a determination of the defendant in dismissing the relator from the police force of the city of New York and reinstated the relator in his position.

The facts, so far as material, are stated in the opinion.

*Frank L. Polk, Corporation Counsel* (*Terence Farley* of counsel), for appellant. A policeman is constructively at least always "on duty" and he is amenable to punishment for offenses committed by him while not actually engaged in patrol duty. (*People ex rel. Connolly* v. *Police Comrs.*, 11 Hun, 403; *People ex rel. Hayes* v. *Carroll*, 42 Hun, 438; *Hart* v. *Kennedy*, 39 Barb. 186; *Coxson* v. *Doland*, 2 Daly, 66.) The statute does not mean and was never intended to mean that after a policeman finished his "tour of duty," and was not on "reserve duty," he was absolutely free to do as he pleased and could not be compelled to do something which would tend to promote the "efficiency of policemen." (*People ex rel. Ramsdell* v. *Jewett*, 15 Misc. Rep. 227; *People ex rel. Robinson* v. *Bell*, 29 N. Y. S. R. 551.) The instructions which the relator received and the drills which he was required to attend, once a week, for seven weeks, for the purpose of preparing the members of the police force for the annual police parade, was not a "tour of duty," or a part of a "tour of duty," within the meaning of the statute. (L. 1911, ch. 360, § 1.) The Three-Platoon Law did not justify the relator in disobeying the orders of his superior officer. (*People ex rel. Gallagher* v. *Waldo*, 145 N. Y. Supp. 1139.) Whether or not the order to report for instructions or drill violated the provisions of the Three-Platoon Law was not for the relator to decide. (*People ex rel. Masterson* v. *French*, 110 N. Y. 494; *Matter of Grimley*, 137 U. S. 147; *Johnstone* v. *Sutton*, 1 T. R. 546.)

*Florence J. Sullivan* for respondent.   Commanding officers cannot assign sergeants, roundsmen and patrolmen in cities of the first and second class to more than one tour of duty exceeding eight consecutive hours in each twenty-four hours; such sergeants, roundsmen and patrolmen cannot be required to perform drill duty or to receive instructions in drilling in addition to and within the twenty-four hours in which they have already performed their regular eight-hour tour of duty.   (L. 1911, ch. 360.)

MILLER, J.   The relator, a patrolman, was dismissed from the police force for disobedience of orders in flatly refusing to appear for drill at 3 P. M. on the 9th of May, 1913, as he was ordered by the lieutenant of his precinct to do.   His refusal was put upon the ground that the order was in violation of law, and he sought to justify his disobedience of the order by chapter 360 of the Laws of 1911, known as "The Three Platoon" law, which provided *inter alia* for the division of the sergeants, roundsmen and patrolmen of the police force into three platoons, and that "No one of such platoons nor any member thereof shall be assigned to more than one tour of duty; such tour of duty shall not exceed eight hours of each consecutive twenty-four hours, nor more than eight hours of reserve duty of each consecutive seventy-two hours, excepting only that in the event of strikes, riots, conflagrations, or occasions when large crowds shall assemble, or other similar emergency, or on a day on which an election authorized by law shall be held, or for the purpose of changing tours of duty, so many of said platoons, or of the members thereof, may be continued on duty for such hours as may be necessary."   (Section 1.) There is no dispute about the facts.   The plaintiff had finished his tour of duty at about midnight on May 8th, and his next tour of duty began at 4 P. M. on May 9th. His position is that in the interval between tours of duty

he was not subject to the orders of his superior.    We do not so construe the statute.

The purpose of the statute is reasonably plain.    It was entitled " An act to promote the health and efficiency of policemen in cities of the first and second class."    Considerable public discussion attended its enactment.    Its purpose was to shorten the time of consecutive service on a tour of duty to eight hours out of every twenty-four, and that was achieved by the " three platoon " system and by the requirement that no one should be assigned to more than one tour of duty, not to exceed eight hours out of twenty-four.    The relator's tour of duty was the patrolling of his post, and he could be required to do that only eight hours out of twenty-four.    If the legislature had meant to relieve members of the force of all duty, even of that of obedience to their superiors, except during eight hours out of twenty-four, we think they would have plainly said so.    The statute may be reasonably construed to accomplish the purpose intended without making it utterly subversive of all discipline.    Section 3 provides: " Policemen, while on reserve duty as mentioned in the first section of this act, shall not be required to render any service except in case of an emergency, and shall be free to retire for sleep during reserve duty in their station house, subject to call in case of an emergency."    The relator was not on reserve duty.

It is stated that the relator was ordered to report for drill in accordance with a custom of the department, pursuant to which the men were required to drill for an hour seven times during the year.    Certainly, such a requirement was reasonable, and we find nothing in the statute to make it unlawful.    Moreover, to disobey the order was not the way to test the meaning of the statute. If each policeman were permitted to decide for himself the meaning of the rules of the department and of the statutes applicable to the discharge of his duties there

could be no discipline. The statement is made that the order was disobeyed for the purpose of presenting a test case. The action of the police commissioner tends to show that that was not done with his approval. If it was, the punishment was altogether too severe, but with that we have nothing to do.

The order of the Appellate Division should be reversed and the determination of the police commissioner confirmed.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK, CHASE and CARDOZO, JJ., concur; HOGAN, J., not voting.

Order reversed, etc.